## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DEFFENBAUGH INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 20-2204-JTM-KGG |
| | ) | |
| UNIFIED GOVERNMENT OF | ) | |
| WYANDOTTE COUNTY/KANSAS | ) | |
| CITY, KANSAS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM & ORDER ON
## MOTION FOR *IN CAMERA* REVIEW AND TO COMPEL

Now before the Court are the "Motion for *In Camera* Review and to Compel

Production of Documents Withheld or Redacted by Plaintiff" (Doc. 71) filed by

Defendant.[1]  Having reviewed the submissions of the parties, Defendant's motion

is **GRANTED in part** and **DENIED in part** for the reasons set forth below.

## FACTUAL BACKGROUND

The parties in this matter had entered into a contract for the collection and

disposal of residential solid waste by Plaintiff for Defendant.  (*See* Doc. 1.)

---

[1]  For purposes of this motion, "Plaintiff" will refer to Deffenbaugh and/or "Waste
Management," Deffenbaugh's brand name.  (Doc. 1, at 1.)  Thus, any individual
employed by Deffenbaugh or Waste Management will be considered an employee of
Plaintiff.

Plaintiff alleges breach of contract and seeks declaratory relief relating to the

termination of that contract. (*Id.*) The Court has jurisdiction based on the diversity

of the parties.

In the present motion, Defendant asks the Court to conduct an *in camera*

review of certain documents that have been withheld from production or redacted

by Plaintiff on the basis of attorney-client privilege and/or the work product

doctrine. (*See* Doc. 71.) According to Defendant, the documents relate to a prior

discovery response that resulted in Plaintiff producing

> two privilege logs, one for redacted documents and one
> for documents withheld in their entirety. The initial
> 'Non-Redacted Documents' log identified 804
> documents withheld from production on the basis of
> attorney-client privileged or work-product. The
> 'Redacted Documents' log identified 484 documents
> produced with redactions of communications claimed to
> be attorney-client privileged or work-product[.]

(Doc. 71, at 2.) Thereafter, the parties engaged in certain communications which,

according to Defendant, resulted in Plaintiff

> produc[ing] or agree[ing] to produce a total of
> approximately *273 documents* that it has improperly
> withheld or redacted on the basis of attorney-client
> privilege or work product, and which would not have
> been produced but for [Defendant] calling into question
> the claimed privilege. The documents produced also
> confirm that the descriptions in [Plaintiff's] privilege logs
> did not accurately describe the substance of the
> communications.

(*Id.*, at 3-4 (emphasis in original).)  Defendant accuses Plaintiff of "over-assertion" of these protections and "requests the Court conduct *in camera* review of certain documents currently withheld or redacted by [Plaintiff] on the basis of attorney-client privilege or work product … ."  (*Id.*, at 4, 5.)  Defendant contends Plaintiff's behavior "demonstrates a pattern of withholding documents that are not truly privileged or protected work product and justifies the UG's ongoing concern over the remaining documents withheld."  (*Id.*, at 20-21.)

## **ANALYSIS**

### I.  **Standards for Discovery.**

Fed. R. Civ. P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.  ***Holick v. Burkhart***, No.16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

### II.  **Standards for Attorney-Client Privilege and Work Product Protection.**

As stated above, jurisdiction in this case is based on the diversity of the parties.  As such, the attorney-client privilege is governed by state law. Fed.R.Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *see also **Kannaday v. Ball***, 292 F.R.D. 640, 646 (D. Kan. 2013) ("state law governs the applicability and scope of attorney-client privilege in diversity actions").

The elements necessary to establish attorney-client privilege are clearly defined by Kansas law.

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.

***Marten v. Yellow Freight System, Inc.***, No. 96-2013-GTV, 1998 WL 13244, *5-6 (D. Kan. Jan. 6, 1998) (citing ***State v. Maxwell***, 10 Kan. App. 2d 62, 63, 691 P.2d 1316, 1319 (1984)).

Not all of a party's communications involving its attorneys are privileged, however.  ***Motley v. Marathon Oil Co.***, 71 F.3d 1547, 1550-51 (10th Cir. 1995). "The attorney-client privilege ... is to be extended no more broadly than necessary to effectuate its purpose."  ***Great Plains Mut. Ins. Co. v. Mutual Reins. Bur.***, 150 F.R.D. 193, 196 (D. Kan. 1993).  The privilege only "protects confidential communications by a client to an attorney made in order to obtain legal assistance

from the attorney in his capacity as a legal advisor." *Marten*, 1998 WL 13244 at

*6; *see also Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006

WL 266599, at *2-3 (D. Kan. Feb. 1, 2006), *clarified in part by Williams v.*

*Sprint/United Mgmt. Co.*, 2006 WL 3694862 (D. Kan. Dec. 13, 2016).

The communication must consist predominantly of legal advice for

protection to attach to the communication. *Taylor v. LM Ins. Corp.*, No. 19-1030,

2019 WL 5696861, at *5 (D. Kan. Nov. 4, 2019). It is well-established that facts

acquired from other persons and sources and merely conveyed between counsel

and client are not privileged. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182

(10th Cir. 2010) (citations omitted).

"Client," "communication," and "attorney" are defined statutorily defined as

follows:

> (1) 'Client' means a person or corporation or other
> association that, directly or through an authorized
> representative, consults an attorney or attorney's
> representative for the purpose of retaining the attorney or
> securing legal service or advice from the attorney in a
> professional capacity … .
>
> (2) "Communication" includes advice given by the
> attorney in the course of representing the client and
> includes disclosures of the client to a representative,
> associate or employee of the attorney incidental to the
> professional relationship.
>
> (3) "Attorney" means a person authorized, or reasonably
> believed by the client to be authorized, to practice law in
> any state or nation the law of which recognizes a

> privilege against disclosure of confidential
> communications between client and attorney.

K.S.A. § 60-246(a).

While claims of attorney-client privilege are governed by state law in diversity cases, the work product doctrine is governed by a uniform federal standard pursuant to Fed.R.Civ.P. 26(b)(3). *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 702 (10th Cir.1998). That rule states, in relevant part:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed.R.Civ.P. 26(a)(3).

Plaintiff asserts that

> real and imminent potential for litigation existed at that
> time is further evidenced by the fact that undersigned
> counsel was engaged to represent Deffenbaugh during
> this time frame and that Deffenbaugh began circulating
> litigation holds concerning this dispute beginning in late
> August 2019. … Thus, as to the documents on privilege
> log created in or after August 2019, Deffenbaugh
> properly withheld those documents as work product.

(Doc. 79, at 12.)  Plaintiff continues that "because all of these documents are also

protected by the attorney-client privilege, the Court need not undertake a work

product analysis in deciding this Motion."  (*Id*.)

## III.  Standards for *In Camera* Review.

It is within the sound discretion of the trial court whether to conduct an *in

camera* review of documents.  ***Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.***, 297

F.R.D. 611, 621 (D. Kan. 2014).

> The court may and does review documents *in camera* to
> determine an alleged privilege, when the party asserting
> it has made some initial, factual showing that it exists.
> The Court must have some bases or grounds for
> conducting an *in camera* review.  Such **review may be
> useful if there is a genuine dispute between the parties
> as to the accuracy of the withholding party's
> description** of certain documents.  **Such review is not,
> however, to be routinely undertaken, particularly in a
> case involving a substantial volume of documents, as a
> substitute for a party's submission of an adequate
> record in support of its privilege claims**.

*Id*. at 621 (emphasis added); *see also **Jaiyeola v. Garmin Int'l, Inc.***, No. 20-2068-

HLT, 2021 WL 492654, at *6 (D. Kan. Feb. 10, 2021) (declining request for in

camera review).  There is no basis for the Court to conduct an *in camera* review in situations wherein the privilege log at issue provides sufficient description of the documents withheld, the requesting party "hasn't shown that the documents aren't privileged," and the underlying dispute comes down to "whether the privileges apply." ***Jaiyeola***, 2021 WL 492654, at *6.

## IV.  Privilege Log Requirements.

A party withholding documents on the grounds of privilege must expressly make the claim of privilege, usually in the form of a privilege log. ***Sprint Comms. Co., L.P. v. Vonage Holdings Corp.***, 05–2433–JWL–DJW, 2007 WL 1347754 (D.Kan. May 8, 2007) (citing Fed.R.Civ.P. 26(b)(5)).  Additionally, Rule 26(b)(5)(A) provides:

> [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed.R.Civ.P. 26(b)(5)(A).  *See also* ***Kear v. Kohl's Dept. Stores, Inc.***, No. 12-1235-JAR-KGG, 2013 WL 3088922, at *3 (D. Kan. June 18, 2013) (citing Fed.R.Civ.P. 26(b)(5)).

Courts in this District have found that a sufficient privilege log should indicate the type of document being withheld, for instance whether it is memorandum, letter, e-mail, etc. *In re Universal Serv. Fund Tele. Billing Practices Lit.*, 232 F.R.D. 669, 673 (D. Kan. 2005) (citing *Hill v. McHenry*, No. 99–2026, 2002 WL 598331, at *2 (D.Kan. Apr. 10, 2002)).  The log should include certain other information such as the basis for withholding the document, the date it was prepared, the identity of the author(s) and recipient(s) "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney," the purpose of preparing the document, and a showing that the communication relates to seeking or giving legal advice.  *Id.*

## V.     Documents at Issue.

The documents at issue are contained in two privilege logs – the log consisting of non-redacted documents that were not produced (Doc. 71-1) and the log consisting of redacted documents (Doc. 71-2) that were produced with redactions.  Entries from the redacted documents log are discussed in subsection A. while entries from the non-redacted documents log are discussed in subsection B., *infra*.

### A.     Privilege Log of Redacted Documents.  (Doc. 71-2.)

#### 1.     Lines 15-17.

These documents consist of an email chain between Carl Niemann, John
Blessing, Paul Howe and Rich Sarac with the subject "Wyco question … ."  (Doc.
71-2, at 1.)  Niemann, Blessing, Howe, and Sarac are non-attorney employees of
Plaintiff.  The email contains two attachments authored by Niemann and an
individual identified as "Pete."  (*Id*.)  The log for redacted documents describes the
documents as follows:  "Email reflecting legal advice from M. Hamstra re: 2012
Contract."

Defendant complaints that Plaintiff has produced "what appears to be an
unredacted version of this same email, which confirms the substance of the
communication does not relate to legal advice from M. Hamstra.  (Doc. 73-2.)
Rather, Neimann states that he, Blessing, and Howe, conducted a "thorough
review" of the contract and developed the attached memo relating to "desired
modification points," ostensibly line 16 of the redacted log.  (Doc. 79-8, at 2.)
According to Defendant, Plaintiff "now agrees the email is not privileged but
refuses to produce the attachments."  (Doc. 71, at 8-9.)  Defendant continues that
"[n]either the email nor the attachments thereto authored by non-lawyers are
privileged communications or work-product."  (*Id*., at 9.)

Defendant's generalization that documents authored by non-lawyers cannot
be considered work-product or attorney-client communications.  The attorney
client privilege clearly "protects confidential communications <u>by a client</u> to an

attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *Marten*, 1998 WL 13244 at *6 (emphasis added).  Further, it is well-established that the work product doctrine protects not only documents created by counsel, but may also protect documents created <u>at the direction of counsel</u>. *See generally* ***Williams v. Sprint/United Mgmt. Co.***, No. 03-2200-JWL-DJW, 2006 WL 2850659 (D. Kan. Oct. 5, 2006).

Plaintiff has not shown that the attachments are work product.  The email at issue was sent in January 2017.  By Plaintiff's own assertion, the anticipation of litigation did not begin until August 2019.  (Doc. 79, at 12.)

The Court finds, however, that the privilege log is sufficient to establish that the attachment to the email (Lines 16) is protected by the attorney-client privilege.  Line 16 clearly indicates that it is an "[a]ttachment to above email reflecting legal advice from [attorney] M. Hamstra re 2012 Contract."  (Doc. 71-2, at 1.)

As for Line 17, however, there has been no explanation by Plaintiff as to the identity of "Pete." (*Id.*, at Line 17.)  As such, there is nothing to establish that information from or communication involving this individual would be subject to the attorney-client privilege.  Defendant's motion is **GRANTED** as to line 17 and Plaintiff is directed to produce the same.

2.    **Lines 23-24, 126-128, 165, 206, 215-217, 221, 224-229, 233, 272, 273, 281, 284-286, 382-386, 394, 396-398.**

These documents are all identified as originating from non-lawyer Justin Vetsch and consisting of "[n]otes reflecting request for legal advice from M. Hamstra re various contract task items" or "… contract task items." (*See* Doc. 71-2.)  According to Defendant, the document was he memorandum was "regularly … circulated among numerous non-attorney employees" of Plaintiff who updated or edited the document.  (Doc. 71, at 9.)  Defendant contends that "[t]he nature of the communications transmitting the document suggests the redactions are not confidential attorney-client communications" and that it was "authored by a business manager and is not privileged (or any privilege is waived) where it is shared among numerous seemingly non-managerial employees in the ordinary course of business."  (*Id.*)

Plaintiff responds that "[p]roducing the redacted information would reveal the substance of the legal advice that was being sought from in-house counsel Micah Hamstra." (Doc. 79, at 24.)  Plaintiff continues that "[t]he fact that this memorandum was circulated among non-attorney employees and was authored by a non-lawyer does not mean that the substance of the statements do not reflect the seeking of legal advice."  (*Id.*)  "'Communications which reflect advice given by counsel to a corporation do not lose their privileged status when they are shared among corporate employees who share responsibility for the subject matter of the communication.'"  ***Anaya v. CBS Broadcasting, Inc.***, 251 F.R.D. 645, 652 (D.

N.M. 2007) (*quoting **Urban Box Office Network, Inc. v. Interfase Managers, L.P.**,* No. 01-8854, 2006 WL 1004472, at *3 (S.D.N.Y. April 18, 2006)); *see also* ***Hansen Constr. Inc. v. Everest Nat'l Ins. Co.**,* 2017 WL 7726711, at *2 (D. Colo. July 28, 2017) (discussing when attorney-client privilege extends as far as "lower-level" corporate employees).

The privilege log at issue (Doc. 71-2) provides a sufficient description of the documents withheld, Defendant "hasn't shown that the documents aren't privileged," and the underlying dispute merely comes down to "whether the privileges apply." ***Jaiyeola**,* 2021 WL 492654, at *6.  There is no basis for the Court to conduct an *in camera* review of these documents.  Defendant's motion is **DENIED** as to this category.

### 3.    Lines 43, 245.

These two documents were authored by Kent Harrel and sent to John Blessing, both of whom are non-lawyers.  (Doc. 71-2, at 3, 13.)  The first is identified as an "email sent for purpose of facilitating legal advice re request by Bonner Springs for a meeting concerning residential trash pick-up" while the second is identified as "email seeking legal advice from M. Hamstra re contract negotiations with Bonner Springs."  (*Id.*)  Both indicate "residential trash pick up" as the email "re" line.  Both are being withheld based on attorney-client privilege and the work product doctrine.  (*Id.*)

Defendant contends that "[i]t is unclear what is intended by 'facilitating legal advice' in an email between two non-lawyers, but the nature of the communications suggests the emails were completely or predominately for the purpose of communicating business matters, advice or strategy and not a privileged communication." (Doc. 71, at 9-10.)  Defendant continues that "[t]he log does not indicate the document was prepared at the direction of counsel or in anticipation of litigation." (*Id.*, at 10.)

Plaintiff directs the Court to a redacted version of the document represented by Line 327. (Doc. 79, at 24-25; Doc. 79-9; Doc. 71-2, at 17, Line 327.)  Plaintiff asserts that this email – which is part of the chain represented by the documents at Lines 43 and 245 – clearly included attorney Micah Hamstra and sought legal advice from him.  According to Plaintiff,

> the emails following Blessing's request for legal advice (Redacted Log Entries 43 and 245) are emails which discuss or comment on Blessing's request for legal advice and were sent for the purpose of facilitating legal advice from Micah Hamstra, as the privilege log descriptions for these documents explain.  That Micah Hamstra is not included on all the subsequent emails following Blessing's request for legal advice does not vitiate the privileged nature of these communications.

(Doc. 79, at 25.)

The privilege log at issue (Doc. 71-2) provides a sufficient description of the documents withheld, Defendant "hasn't shown that the documents aren't

privileged," and the underlying dispute merely comes down to "whether the privileges apply." ***Jaiyeola***, 2021 WL 492654, at *6.  There is no basis for the Court to conduct an *in camera* review of these documents.  Defendant's motion is **DENIED** as to this category.

### 4.    Lines 51, 52, 53, 60, 61, 63, 365, 366, 370.[2]

This group is comprised of an email chain with the subject line of "Kansas City KS Contract – Spring 2016 RO PI Issue."  (Doc. 71-2, at 4, 19.)  The documents are being withheld on the basis of the attorney-client privilege, with the stated description of "email exchanged for purposes of seeking legal advice from M. Hamstra re payments, fees, and rates disputed by the UG under the 2012 Contract."[3]  (*Id*.)  The email was exchanged between John Blessing, Carl Niemann, Becky Robinson, Delores Walton, Blaine Degnan, all of whom are non-lawyer employees of Plaintiff.  (*Id*.)

According to Defendant, the description of the communications suggest that "the redacted communications are completely or predominantly for purposes of communicating business matters, advice or strategy, on which Mr. Hamstra was merely copied, and they are not privileged attorney-client communications."  (Doc. 71, at 10.)  Plaintiff responds that

---

[2] These emails are in the same email chain as the documents represented by Lines 533-540, 544, and 556 of the non-redacted log (Doc. 71-1), discussed *infra*.

[3] As used herein, "UG" refers to "Unified Government."

> [t]he email string starts with an email from paralegal
> Yvette Korb and the redacted emails include attorney
> Micah Hamstra and paralegal Yvette Korb.  Further, the
> email on WM_0052903 [Doc. 79-10] that is partially
> redacted begins with 'I believe legal,' showing there is a
> discussion about information related to advice from the
> legal department.  The descriptions for all of these entries
> explain that there was legal advice being sought.  [Doc.
> 71-2.]  The fact that some of the e-mail chain is not
> privileged does not waive the privilege as to the portion
> of the e-mail chain that is redacted.

(Doc. 79, at 25.)

The Court finds that there is no basis for the Court to conduct an *in camera*

review of these documents.  The privilege log at issue (Doc. 71-2) provides a

sufficient description of the documents withheld, Defendant "hasn't shown that the

documents aren't privileged," and the underlying dispute merely comes down to

"whether the privileges apply."  *See Jaiyeola*, 2021 WL 492654, at *6.

Defendant's motion is **DENIED** as to this category.

### 5.    Line 62.

This document is an email chain with the subject line "KCK Master

Agreement – Priority Negotiation Points to Broach 9/15."  (Doc. 71-2, at 4.)  The

email was exchanged between Paul Howe, John Blessing, Carl Niemann, and Kent

Harrell, who are non-legal employees of Plaintiff, as well as attorney Micah

Hamstra and paralegal Yvette Korb.  (*Id*.)  The privilege log describes the email as

"seeking legal advice re negotiation points with the UG on the 2012 Contract."
(*Id*.)

Defendant contends that "the emails do not appear to be directed to [attorney Hamstra] as he does not respond to any email or otherwise participate in the communication." (Doc. 71, at 10. ) Defendant argues that "[t]he nature of the communication suggests the redacted emails were completely or predominantly for purpose of communicating business matters, advice or strategy and not requesting legal advice from Mr. Hamstra." (*Id*.)

Plaintiff argues that

> Defendant's Motion inaccurately contends that the document does not appear to be directed to [attorney] Micah Hamstra and argues that Hamstra 'does not respond to any email or otherwise participate in the communication.' Motion at 10. To the contrary, Non-Redacted Log Entries 88 and 89 are part of the same email string (as evident by the subject line and date of the email) and evidence that Micah Hamstra did participate in the discussions contained in these emails. [Doc. 71-1, at Lines 88, 89.]

(Doc. 79, at 19.)

The Court finds that there is no basis for the Court to conduct an *in camera* review of these documents. The privilege log at issue (Doc. 71-2) provides a sufficient description of the documents withheld, Defendant "hasn't shown that the documents aren't privileged," and the underlying dispute merely comes down to

"whether the privileges apply."  *See Jaiyeola*, 2021 WL 492654, at *6.

Defendant's motion is **DENIED** as to this category.

   **6.**  **Line 69.**

   This document is an email from non-attorney Carl Niemann to non-attorney

John Blessing with the subject "KCK – Request for Under billed Calculation on

CO and RO Work, History of PIs to KCK, and Adjustments for Impact Fee

Increases Implemented this Spring."  (Doc. 71-2, at 4.)  The log indicates attorney-

client privilege as the basis for it being withheld, with the stated reason "email

reflecting legal advice of [attorney] M. Hamstra re history of PIS implemented

with KCK."  (*Id*.)

   According to Defendant, "[t]he nature of the communication suggests it is

completely or predominantly for the purpose of communicating business matters,

advice, or strategy."  (Doc. 71, at 11.)  Defendant continues that "Plaintiff has

agreed to produce this document with modified redactions, but has not as of the

date of this filing, and it is unclear if any portion should be redacted."  (*Id*.)

   Plaintiff responds that "[t]he redacted portion of the email chain

contains privileged communications" while the "portion of this email which could

be construed as communicating business advice or strategy is not redacted."  (Doc.

79, at 28.)

The Court finds that there is no basis for the Court to conduct an *in camera* review of these documents.  The privilege log at issue (Doc. 71-2) provides a sufficient description of the documents withheld, Defendant "hasn't shown that the documents aren't privileged," and the underlying dispute merely comes down to "whether the privileges apply."  *See Jaiyeola*, 2021 WL 492654, at *6. Defendant's motion is **DENIED** as to this category.

       7.    **Line 79.**

This document is an email chain containing a redacted email from non-attorney John Blessing to non-attorney Robin Lunacek with the stated subject of "UG/KCK."  (Doc. 71-2, at 5.)  The log lists attorney-client privilege and the work product doctrine as the bases for withholding and describes the privilege as "email reflecting strategy of WM's legal department and outside counsel in regards [sic] to dispute by WM and UG."  (*Id*.)  The Court surmises – and Plaintiff verifies – that the redacted portion consists of Blessing answering Ms. Lunacek's inquiry about the "resolution of the liquidated damages charged by" Waste Management. (Doc. 73-9, at 1; Doc. 79, at 25.)

Defendant contends that "[t]he nature of the communication and question asked suggests the response by Mr. Blessing does not convey legal advice of counsel or is otherwise privileged."  (Doc. 71, at 11.)  Defendant continues that

"[t]he log does not indicate the document was prepared in anticipation of litigation or was directed by counsel." (*Id*.)

The initial email includes Ms. Lunacek's inquiry to Blessing, "What is the status of this dispute?" (Doc. 79, at 25; Doc. 73-9, sealed, at 1.) Plaintiff explains that the redacted email "then contains information that Blessing received from in-house and outside counsel based on privileged communications and includes discussion of legal strategy and positions." (Doc. 79, at 25.)

The Court finds that there is no basis for the Court to conduct an *in camera* review of these documents. The privilege log at issue (Doc. 71-2) provides a sufficient description of the documents withheld, Defendant "hasn't shown that the documents aren't privileged," and the underlying dispute merely comes down to "whether the privileges apply." *See Jaiyeola*, 2021 WL 492654, at *6. Defendant's motion is **DENIED** as to this category.

## 8.   Lines 108, 112, 297, 340.

These documents are an email chain with the subject line "Urgent Complaint letter from Wyandotte County. Needs response prior to customer call at 11am!" (Doc. 71-2, at 6, 7, 15, 18.) The document consists of a fully redacted email from non-attorney John Blessing to non-attorneys Justin Vetch, Kent Harrell, Lisa Disbrow, with attorney Micah Hamstra and paralegal Yvette Korb listed as recipients. (*Id*.) The log states the documents are being withheld on the bases of

the attorney-client privilege and work product doctrine, with the stated privilege description of "email chain seeking legal advice re response to letter from the UG" (*id.*, at 6, 7) or "email requesting legal advice from M. Hamstra re response to complaint letter received from UG" (*id.*, at 15, 18.)

Defendant contends that the communications do not appear to be directed to Hamstra "as he does not respond to any email or otherwise participate in the communication." (Doc. 71, at 11-12.)  Defendant continues that "[t]he nature of the communications suggests the redacted email from Blessing is completely or predominantly for purposes of communicating business matters, advice or strategy" and that the privilege log "does not indicate the document was prepared in anticipation of litigation."  (*Id.*, at 12.)

Plaintiff responds that "[t]he subject line of the email chain also makes clear that it is seeking advice on responding to a letter from the [Unified Government]." (Doc. 79, at 19.)  The Court is not persuaded by Defendant's position that the email chain cannot be seeking legal advice from Hamstra because he does not respond in the email chain.  As Plaintiff correctly asserts, "[t]his is irrelevant – the fact that counsel does not respond to an email in writing does not mean that the sender is not requesting legal advice."  (*Id.*)

The Court finds that there is no basis for the Court to conduct an *in camera* review of these documents.  The privilege log at issue (Doc. 71-2) provides a

sufficient description of the documents withheld, Defendant "hasn't shown that the documents aren't privileged," and the underlying dispute merely comes down to "whether the privileges apply."  *See Jaiyeola*, 2021 WL 492654, at *6. Defendant's motion is **DENIED** as to this category.

### 9.    Line 139.

According to the privilege log, this document is an email from Carl Neimann to John Blessing, both of whom are non-attorneys.  (Doc. 71-2, at 8.)  Defendant's brief, however, describes the document as an email chain from Blessing to several non-attorney employees of Plaintiff, copying attorney Micah Hamstra, with the subject line "WM Meeting 1-9-19." (Doc. 71-12).  This is the accurate description of the document.  (*See* Doc. 79-14.)

The response from Niemann indicates Blessing's email was a summary and list of action items.  (*Id.*)  The log states "[e]mail reflecting request for legal advice re contract negotiations with UG."  (Doc. 71-2, at 8.)  According to Defendant, "[t]he nature of the communications suggests Blessing's email was completely or predominantly for the purpose of communicating business matters, advice or strategy"  and that "[t]o the extent the email in part requests advice from Mr. Hamstra, only that portion should be redacted."  (Doc. 71, at 12.)

Plaintiff responds that the "redacted portion of the email chain

contains privileged communications," while the portion that "could be construed as communicating business advice or strategy is not redacted." (Doc. 79, at 28-29.) The Court finds this to be appropriate. There is no basis for an *in camera* inspection of this document based on the information provided to the Court. This portion of Defendant's motion is **DENIED**.

### 10.   Lines 146, 149, 201, 348.

These documents are copies of a memo titled written by non-attorney Carl Niemann. (Doc. 71-2, at 8, 11, 18.) Defendant contends the document was edited by non-attorney John Blessing and attached to emails between these two employees of Plaintiff. (Doc. 71, at 12.) The document was attached to emails between Carl Niemann and John Blessing. (Doc. 73-12, sealed.) A significant portion of the memo is redacted. (*Id*.) The privilege log indicates that the memo consists of '[n]otes reflecting WM's legal strategy concerning house count dispute with UG and request for legal advice from M. Hamstra." (Doc. 71-2, at 8, 11, 18.)

Defendant contends that the memo "does not indicate it was intended for communication with Mr. Hamstra or directed by Mr. Hamstra" but rather that "the nature of the communication suggests it is completely or predominantly for the purpose of communicating business matters, advice or strategy." (Doc. 71, at 12-13.) Plaintiff explains, however, that this memorandum "contains a mix of

business and legal advice, thus the "discussion of legal advice is redacted, while the business advice is not redacted." (Doc. 79, at 29.)

The Court finds that there is no basis for the Court to conduct an in camera review of these documents. The privilege log at issue (Doc. 71-2) provides a sufficient description of the documents withheld, Defendant "hasn't shown that the documents aren't privileged," and the underlying dispute merely comes down to "whether the privileges apply." *See Jaiyeola*, 2021 WL 492654, at *6. Defendant's motion is **DENIED** as to this category.

### 11.   Lines 171, 172.

These emails are from non-attorney John Blessing to non-attorneys Kent Harrell and Justin Vetch, as well as attorney Micah Hamstra, with the subject line "Waste Management & 311 Operations Updates" and "WM Response for May 2019 Request." (Doc. 71-2, at 9.) The log describes the emails as "sent for the purpose of facilitating legal advice from M. Hamstra re communication with UG's 311 Manager" and "sent for the purpose of facilitating legal advice from M. Hamstra re UG's responses to WM's questions concerning the May 2019 data." (*Id*.) The documents are being withheld on the basis of the attorney-client privilege and work product doctrine. (*Id*.)

Defendant argues that "[i]t is unclear what 'facilitating legal advice' is intended to mean in this context, but the log does not indicate the email was sent

for the purpose of requesting legal advice from Mr. Hamstra." (Doc. 71, at 13.) Defendant continues that "[t]he nature of the communication suggests it is completely or predominantly for the purpose of communicating business matters, advice or strategy, on which Mr. Hamstra is merely included as one of several recipients" and that the log "does not indicate the document[s were] prepared in anticipation of litigation or at the direction of counsel." (*Id.*)

The Court is unpersuaded by Defendant's argument, which basically boils down to "counsel being one of many recipients of an email means the document cannot be privileged." "'Communications which reflect advice given by counsel to a corporation do not lose their privileged status when they are shared among corporate employees who share responsibility for the subject matter of the communication.'" ***Anaya***, 251 F.R.D. at 652 (D. N.M. 2007) (*quoting **Urban Box Office Network, Inc***, 2006 WL 1004472, at *3).

Defendant has made no argument that any of the individuals involved in the email chain would be outside the umbrella of the attorney-client privilege as to the topics discussed. The sheer number of people involved in the discussion does not invalidate the privilege. This portion of Defendant's motion is **DENIED**.

### 12.   Line 412.

This privilege log states this document is an email between Kelly Rooney and Sue Powell, both of whom are non-attorneys, with the subject line "Fwd: May

Data – Misses." (Doc. 71-2, at 21.) Defendant's brief, however, describes the document as "a fully redacted email from John Blessing to non-attorneys Justin Vetsch, Kent Harrell and Kelly Rooney, and [attorney] Hamstra, subject 'Fwd: May Data – Misses.'" (Doc. 71, at 14.)

Regardless, the privilege log describes the document as an "[e]mail requesting legal advice from M. Hamstra re UG's penalty calculation for May 2019." (Doc. 71-2, at 21.) The log indicates the document is withheld on the basis of the attorney-client privilege and work product doctrine. (*Id.*)

Defendant argues that the "email is directed to numerous non-attorneys suggesting it is completely or predominantly for the purpose of communicating business matters, advice or strategy, on which Mr. Hamstra is merely copied and it is not a privileged communication seeking his legal advice." (Doc. 71, at 14.)

There has been no evidence presented that any of the email recipients are outside third-parties, nor does Defendant advance this argument. To the contrary, all of the recipients are employee-representatives of the party Plaintiff in this case.

Although the attorney-client privilege may be waived when a corporation disclosures private communications to third parties, the attorney-client privilege is not waived merely by sharing intra-corporately. "'Communications which reflect advice given by counsel to a corporation do not lose their privileged status when they are shared among corporate employees who share responsibility for the

subject matter of the communication.'" ***Anaya***, 251 F.R.D. at 652 (*quoting **Urban***

***Box Office Network, Inc.***, 2006 WL 1004472, at *3); *see also **Hansen Constr.***

***Inc.***, 2017 WL 7726711, at *2 (discussing when attorney-client privilege extends

as far as "lower-level" corporate employees).

No valid justification has been set forth to conduct an *in camera* review of

this document.  As such, this portion of Defendant's motion is **DENIED**.

### 13.   Line 183.

This is an email from John Blessing to Kent Harrell and attorney Micah

Hamstra with the subject line "WMI Appeal."  (Doc. 71-2, at 10.)  The log

describes this email as  "reflecting legal strategy in WM's 6-18-19 Response and

Appeal Letter" and is listed as attorney-client privileged and protected by the work

product doctrine.  (*Id*.)

Defendant indicates that while Hamstra is a recipient of the email, he "does

not respond to any email or otherwise participate in the communication."  (Doc.

71, at 14.)  Defendant also indicates that "[o]ne of the redactions appears to be a

single or very few words."  (*Id*.)

The Court agrees with Plaintiff's assertion that "[t]here is no requirement

that a statement in a communication must be a minimum length before it can be

privileged."  (Doc. 79, at 20.)  Further, there is no requirement that a

communication must include any response from counsel to be classified as

attorney-client communication.  The privilege clearly also "protects confidential communications <u>by a client to an attorney</u> made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."  **Marten**, 1998 WL 13244 at *6.  *See also* **In re Grand Jury**, 616, F.3d at 1182 (holding that the privilege protects the client's communications to a lawyer).

Defendant has advanced no valid justification for the Court to conduct an *in camera* review of this document.  As such, this portion of Defendant's motion is **DENIED**.

### 14.   Line 218.

This document is a partially redacted email from non-attorney Susan Molton to non-attorneys Kent Harrell, Sue Smith, Ryan Nordt, and Bill Minnis with the subject line "PDA and questions re KCK."  (Doc. 71-2, at 12; Doc. 73-17.)  There were no attorneys involved in the communication.  (*Id.*)  The privilege log indicates the email "discuss[es] advice from counsel re UG contract."  (Doc. 71-2, at 12.)  The log indicates the document is being withheld on the basis of the attorney-client privilege and work product doctrine.  (*Id*.)

Defendant contends that "[t]he nature of the communications suggests the redacted text is completely or predominantly for the purpose of communicating business matters, advice or strategy" and that "[t]he log does not indicate the documents were prepared in anticipation of litigation."  (Doc. 71, at 14-15.)

Plaintiff responds that the email "contains limited redactions of advice from counsel" and that "[t]hose portions of the email that are not discussing legal advice have not been redacted." (Doc. 79, at 25-26.) The Court will not rely on Defendant's conclusory assumption that the redacted text may merely consist of business communications.

Defendant has advanced no valid justification for the Court to conduct an *in camera* review of this document. As such, this portion of Defendant's motion is **DENIED**.

### 15. Line 242.

This document is an email from non-attorney Kent Harrell to non-attorneys Paul Howe and Lisa Disbrow, with a copy to attorney Micah Hamstra. (Doc. 71-2, at 13.) The email has a subject line of "FW: Emailing: Contract for Residential Solid Waste 120101-311231" and is being withheld on the basis of the attorney-client privilege. (*Id.*) The log describes the email as "facilitating legal advice from M. Hamstra re penalties under the 2012 Contract and the 311 system." (*Id.*)

Defendant contends that "[t]he nature of the communication suggests it is completely or predominantly for the purpose of communicating business matters, advice or strategy, on which Mr. Hamstra was copied but not asked to provide legal advice and did not provide legal advice." (Doc. 71, at 15.)

The fact that an attorney was "one of many recipients" of a communication does not *per se* invalidate its status as attorney-client communication.  ***Legends Mgt. Co., LLC v. Affiliated Ins. Co***., No. 16-1608-SDW-SCM, 2017 WL 4227930, at *4 (D. N.J. Sept. 22, 2017).  *Cf. **Anaya***, 251 F.R.D. at 652 (citation omitted) (holding that "'[c]ommunications which reflect advice given by counsel to a corporation do not lose their privileged status when they are shared among corporate employees who share responsibility for the subject matter of the communication'") and ***Hansen Constr. Inc.***, 2017 WL 7726711, at *2.  No valid justification to conduct an *in camera* inspection has been put forth.  As such, this portion of Defendant's motion is **DENIED**.

Defendant states that Plaintiff has agreed to produce the email with modified redactions, "but has not as of the date of this filing, and it is unclear that any portion of the email should be redacted."  (Doc. 71, at 15.)  Plaintiff has done so (Doc. 79-6.)  The Court finds this production, with the indicated redactions, to be appropriate.

## 16.  Line 280.

This is an email between non-attorneys Kent Harrell and Susan Molton (no attorneys included) with the subject line "KC Hauling Residential Review."  (Doc. 71-2, at 15.)  According the privilege log, the document is protected by the attorney-client privilege and work product doctrines because it "discuss[es] legal

advice from M. Hamstra re Deffenbaugh continuing to provide services under the 2012 Contract and residential unit verification." (*Id.*)

According to Defendant, "[t]he nature of the communication suggests the redacted text is completely or predominantly for the purpose of communicating business matters, advice or strategy, not the confidential disclosure of legal advice provide by Mr. Hamstra." (Doc. 71-2, at 15.)  Defendant continues that "[t]he log does not indicate the documents were prepared in anticipation of litigation." (*Id.*)

Plaintiff responds that the redacted portions of the email "are discussing legal advice from in-house attorney Micah Hamstra" and that "[t]hose portions of the email that are not discussing legal advice have not been redacted." (Doc. 79, at 26.)  The Court will not rely on Defendant's conclusory assumption that the redacted text may merely consist of business communications.

Defendant has advanced no valid justification for the Court to conduct an *in camera* review of this document.  As such, this portion of Defendant's motion is **DENIED**.

### 17.    Lines 371, 373.

These documents contain redacted emails from non-attorneys Sue Powley and Carl Niemann to several other non-attorney employees as well as attorney Micah Hamstra, with the subject line "KCK CONTRACT REIVEW AND PRO FORMA BUILD – Check-In & Coordination Call." (Doc. 71-2, at 19; Doc. 73-

20.)  The log indicates the documents are attorney-client privileged because they consist of "Email seeking and facilitating legal advice re negotiation provisions in the 2012 Contract."  (Doc. 71-2, at 19.)

According to Defendant, "[t]he nature of the communications suggest they were completely or predominantly for the purpose of communicating business matters, advice or strategy and related to a financial proforma, not the confidential disclosure of legal advice provide by Mr. Hamstra."  (Doc. 71, at 16)  Defendant continues that Plaintiff has agreed to produce the emails with modified redactions, "but has not as of the date of this filing, and it is unclear if any portion should be redacted."  (*Id*.)

Plaintiff responds that "[t]he redacted portion of the emails relates to the solicitation of legal advice from Micah Hamstra."  (Doc. 79, at 29.)  The privilege log clearly reflects this.  There is no valid justification for the Court to conduct an *in camera* review.  As such, this portion of Defendant's motion is **DENIED**.

### 18.   Line 410.

This document is an email chain which starts with a series of four fully redacted emails between non-attorneys Paul Bickford, John Blessing and Justin Vetch on which no attorney is copied.  (Doc. 71-2, at 21; Doc. 73-21.)  Attorney Micah Hamstra is eventually involved and the chain includes email directly from

him.  (*Id.*)  The log lists the document as protected by the attorney-client privilege and work product doctrine and states that it is an "[e]mail providing, seeking, and discussing legal advice re: meeting with the UG, fleet maintenance, and evaluation of the 2012 Contract."  (Doc. 71-2, at 21.)

Defendant argues that "[t]he redacted emails between businesspeople with no attorney involvement suggest they are business communications that do not request or convey legal advice from Mr. Hamstra and are not privileged" and that "[t]he log does not indicate the documents were prepared in anticipation of litigation."  (Doc. 71, at 16.)

Plaintiff responds that "[t]he redacted portion of the emails relates to the solicitation of legal advice from Micah Hamstra."  (Doc. 79, at 29.)  The privilege log clearly reflects this.  There is no valid justification for the Court to conduct an *in camera* review.  As such, this portion of Defendant's motion is **DENIED**.

### B.    Privilege Log of Non-Redacted Documents.[4]  (Doc. 71-1.)

### 1.    Lines 2-3.

These are emails from non-attorney Carl Niemann to non-attorney John Blessing with the subject line of "KCK Wyandotte billing of fees dispute."  (Doc.

---

[4] The documents discussed in this section from the privilege log consisting of Doc. 71-1 have not been redacted and have been withheld in their entirety.

71-1, at 1.)  The documents have been withheld on the basis of the attorney-client privilege with the stated reason that they consist of an "[e]mail exchanged for purposes of seeking legal advice from [attorney] M. Hamstra re 1993 and 2012 Contracts and billing fee disputes."  (*Id.*)

Defendant argues the documents should be reviewed and/or produced because no attorneys were involved in communication according to the log and, thus, the communication was "most likely to be for business purposes, advice or strategy and not privileged."  (Doc. 71, at 17.)  According to Defendant, Plaintiff has agreed to produce with redactions but has not as of this filing and it is unclear if any portion should be redacted.  (*Id.*)  These documents were not referenced in Plaintiff's opposition brief (Doc. 79) or in Defendant's reply (Doc. 87).  As such, the Court surmises the issue has been resolved and reaches no conclusion herein. To the extent Plaintiff has not produced these documents, it has waived any argument for failing to do so.

## 2.    Lines 11-14.

These are email with the subject line of "KCK Wyandotte billing of fees dispute."  (Doc. 71-1, at 1.)  The email are from non-legal employee John Blessing to several non-legal employees, with attorney Micah Hamstra included as a recipient.  Thus, the attorney-client privilege has been raised.  (*Id.*)  The log

indicates the email relate to "seeking legal advice re 1993 and 2012 Contracts and billing and fee disputes." (*Id.*)

Defendant notes that Hamstra "is one of several recipients but does not participate in the communication," thus it "is most likely to be predominately for business purposes, advice or strategy and not privileged." (Doc. 71, at 17.) According to Defendant, Plaintiff has agreed to produce the email with redactions, "but has not as of this filing and it is unclear if any portion should be redacted." (*Id.*)

Citing authority from outside this District and the 10th Circuit, Plaintiff argues that "the fact an email contains multiple recipients does not alter the privilege analysis and is not dispositive of whether the privilege applies." (Doc. 79, at 17-18 (citing *Legends Mgt. Co.*, 2017 WL 4227930, at *4.) The Court agrees with this legal principle.

Again, there has been no evidence presented that any of the email recipients are outside third-parties, nor does Defendant make this argument. To the contrary, all of the recipients are employee-representatives of the party Plaintiff in this case. Although the attorney-client privilege may be waived when a corporation disclosures private communications to third parties, the attorney-client privilege is not waived merely by sharing intra-corporately. "'Communications which reflect advice given by counsel to a corporation do not lose their privileged status when

they are shared among corporate employees who share responsibility for the subject matter of the communication.'" *Anaya*, 251 F.R.D. at 652 (*quoting Urban Box Office Network, Inc.*, 2006 WL 1004472, at *3); *see also Hansen Constr. Inc.*, 2017 WL 7726711, at *2 (discussing when attorney-client privilege extends as far as "lower-level" corporate employees).

No valid justification to conduct an *in camera* inspection has been put forth. As such, this portion of Defendant's motion is **DENIED**.

### 3.     Lines 18-19.

This is an email and email attachment related to "UG 311 fine data." (Doc. 71-1, at 1.) All recipients were non-attorney employees of Plaintiff. (*Id.*) The documents were withheld on the basis of the attorney-client privilege and work product protection as exchanged or prepared "for purposes of seeking legal advice from [attorney] M. Hamstra related to analysis of fines assessed against [Plaintiff] under the 2012 contract." (*Id.*)

Defendant complains that the log lists no author of the document, although Plaintiff has indicated that non-attorney John Blessing drafted it. (Doc. 71, at 17; Doc. 79, at 26.) Defendant also points out that, according to the log, no attorney is "involved" in the document and the attachment was drafted by a non-lawyer. (*Id.*; *see also* Doc. 71-1, at 1.)

Plaintiff responds as follows:

> [t]he descriptions for these documents explain this email
> was exchanged and prepared for 'purposes of seeking of
> legal advice from Micah Hamstra related to analysis of
> fines assessed against Deffenbaugh under the 2012
> Contract.' … (Doc. 71-1). The spreadsheet attached as
> Entry 19 is the same as the spreadsheet Deffenbaugh
> previously inadvertently produced and subsequently
> clawed back pursuant to a clawback letter, dated
> November 5, 2020.  [Doc. 79-11] (11/5/20 Clawback).
> That clawback letter explains that this spreadsheet was
> prepared in conjunction with obtaining legal advice from
> in-house attorney Micah Hamstra as well as outside
> counsel and was prepared in reasonable anticipation of
> litigation and therefore it is protected by the attorney-
> client privilege and work product doctrine.  Defendant
> did not challenge this clawback.  Non-Redacted Log
> Entry 18 is an email in which John Blessing explained
> the process he undertook to create the spreadsheet
> attached to the email as Non-Redacted Log Entry 19, and
> therefore it is similarly protected.

(Doc. 79, at 26.)  Plaintiff has adequately explained the privileged and/or protected

nature of the document involved.  Defendant has not set forth a valid justification

to conduct an *in camera* inspection.  As such, this portion of Defendant's motion is

**DENIED**.

## 4.    Line 21.

This is an email with the subject line "June and July KCK 311 Fine data"

sent to three non-attorney employees as well as attorney Micah Hamstra.  (Doc.

71-1, at 1.)  The document was withheld on the basis of the attorney-client

privilege and work product protection as "seeking legal advice and preparing work

product re missed pick ups, fine data, and evaluation of the 311 system." (*Id.*)

Defendant complains that no author of the document is listed in the log, although Plaintiff has indicated it was written by John Blessing.  (Doc. 71, at 17; Doc. 79, at 21.)  Defendant also states that while attorney Hamstra is listed as one of several recipients, "[t]he communication is most likely to be predominately for business purposes, advice or strategy and not privileged."  (*Id*.)  Defendant has provided no substantive support for this conclusory allegation.

As discussed above, advice from counsel to a corporate client does not lose its privileged status simply because it is shared among numerous corporate employees who have responsibility for the subject of the advice.  *See Anaya*, 251 F.R.D. at 652 (citation omitted); *see also Hansen Constr. Inc.*, 2017 WL 7726711, at *2 (discussing when attorney-client privilege extends as far as "lower-level" corporate employees).  Defendant's motion is **DENIED** as to this document.

### 5.    Lines 35, 38, 51-54.

These are email between various non-attorney employees of Plaintiff regarding "KCK Annual Price Increase calculation (January 2021)."  (Doc. 71-1, at 2, 3.)  Plaintiff has indicated the documents discuss or reflect "legal advice of [attorney] M. Hamstra re price increase calculations under the 2021 Contract" and, therefore, have been withheld on the basis of the attorney-client privilege and the work product doctrine.  (*Id*.)

Defendant complains that the privilege log gives no indication of attorney involvement with the documents. (Doc. 71, at 17.) Defendant indicates that while Plaintiff subsequently produced these documents with redactions, "based upon the description in the log the communication are most likely to be predominately for business purposes, advice or strategy and not privileged." (*Id*.)

The written communication between corporate management employees is not typically protected by the attorney-client privilege, but "a party may be able to successfully demonstrate applicability of privilege by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice." ***White v. Graceland College Center for Professional Devel. & Lifelong Learning, Inc.***, 586 F.Supp.2d 1250, 1269 (D. Kan. 2008) (citing ***Williams v. Sprint/United Mgmt. Co.***, No. 03–2200–JWL–DJW, 2006 WL 266599, at *3 (D.Kan. Feb. 1, 2006) (holding that attorney-client privilege could apply to communications of legal advice between non-lawyer members of management and human resources department if the communication was made in confidence for the primary purpose of obtaining legal advice)). "In order to do so, the party asserting the privilege must be able to establish the communication was made in confidence for the primary purpose of obtaining legal advice even though not a direct communication from or to counsel." (*Id*.) The Court finds that this extends to imparting legal advice to such employees as well.

The privilege log at issue (Doc. 71-2) provides a sufficient description of the documents withheld and establishes that they the communications were for the primary purpose of imparting legal advice received from in-house counsel.  (Doc. 71-1, at 2, 3.)  Defendant "hasn't shown that the documents aren't privileged," and the underlying dispute merely comes down to "whether the privileges apply."  *Jaiyeola*, 2021 WL 492654, at *6.  There is no basis for the Court to conduct an *in camera* review of these documents.  Defendant's motion is **DENIED** as to this category.

### 6.   Lines 90-92.

These documents consist of an email from non-attorney Carl Niemann to several non-attorney employees of Plaintiff as well as attorney Micah Hamstra, along with two attachments to that email.  (Doc. 71-1, at 5.)  The email has a subject line of "KCK MASTER AGREEMENT – PRIORITY NEGOTIATION POINTS TO BROACH 9/15."  (*Id.*)  The log indicates the email discusses and seeks "legal advice re negotiations with the UG on the 2021 Contract."  (*Id.*)  The attachments are stated to have been "prepared for facilitating legal advice from M. Hamstra re negotiation points with the UG on the 2021 Contract."  (*Id.*)  The documents have been withheld on the basis of the attorney-client privilege.  (*Id.*)

Defendant contends that although attorney Hamstra is "one of the many recipients," Mr. Hamstra is included as one of many recipients," "[t]he communication is most likely to be predominately for business purposes, advice or strategy and not privileged." (Doc. 71, at 17.) Defendant points out that the attachments, which were written by non-attorneys Carl Niemann and an otherwise unidentified "Pete," are "likely for business purposes, advice and strategy and not privileged." (*Id*.)

Plaintiff responds that the email contains "a specific portion … in which [attorney] Micah [Hamstra] and [paralegal] Yvette [Korb] are … addressed, and that is seeking legal advice." (Doc. 79, at 29; Doc. 79-19, at 2.) Lines 91 and 92 are the attachments to the email and, according to Plaintiff, "were prepared by non-attorneys for the purpose of facilitating legal advice from in-house attorney Micah Hamstra concerning negotiation points on the 2012 Contract." (Doc. 79, at 29.)

The Court finds that there is no basis for Defendant's conclusory statement that the documents are "most likely to be predominately for business purposes, advice or strategy and not privileged." (Doc. 71, at 17.) Plaintiff has sufficiently described the documents and has clearly established that counsel was involved in the communication. Advice from counsel to a corporate client does not lose its privileged status simply because it is shared among numerous corporate employees who have responsibility for the subject of the advice. *See **Anaya***, 251 F.R.D. at

652 (citation omitted).  This portion of Defendant's motion is **DENIED** as to Lines 90 and 91.

As for Line 92, however, there has been no explanation by Plaintiff as to the identity of "Pete."  (Doc. 71-1, at Line 92.)  As such, there is nothing to establish that information from or communication involving this individual would be subject to the attorney-client privilege.  Defendant's motion is **GRANTED** as to line 92 and Plaintiff is directed to produce the same.

### 7.   Lines 95-98.

These documents consist of two emails, with the subject line "KCK CONTRACT REVIEW AND PROFORMA BUILD – Check-in & Coordination Call," and attachments thereto.  (Doc. 71-1, at 5.)  The email were written by and exchanged between various non-attorney employees of Plaintiff and attorney Micah Hamstra was also a recipient.  The attachments were written by non-attorney employee John Blessing and an otherwise unidentified "WMI-USER." (*Id*.)  The emails are stated to be attorney-client privileged as they were written for the purpose of "seeking legal advice re negotiation provisions in the 2021 contract" while the attachments were "prepared for the purpose" of seeking that legal advice. (*Id*.)

Defendant again contends that attorney Hamstra was merely one of many recipients, thus "[t]he communication is most likely to be predominately for

business purposes, advice or strategy and not privileged." (Doc. 71, at 17.) Defendant indicates that Plaintiff has agreed to produce the documents with redactions "but has not as of this filing and it is unclear if any portion should be redacted." (*Id.*, at 17-18.)

Plaintiff responds that "[t]he fact that the parent email included six recipients in the to line, including counsel, and a paralegal in the CC line does not mean the documents loses its privileged status." (Doc. 79, at 30.) The Court agrees. This portion of Defendant's motion is **DENIED**.

### 8.     Lines 102, 103.

These are email sent by non-attorney employee Carl Niemann to various non-attorney employees as well as attorney Micah Hamstra. (Doc. 71-1, at 6.) The first has the subject line of "Request for Contract Review and Proforma Build – KCK Municipal Contract" and is indicated to seek "legal advice re negotiating provisions in the 2021 contract." (*Id.*)  The second has the subject line of "KC CONTRACT REVIEW AND PROFORMA BUILD – Check-in & Coordination Call" and is indicated to be a "[m]eeting invitation containing details seeking legal advice re negotiation provisions in the 2021 Contract." (*Id.*)  Both are withheld on the basis of the attorney-client privilege. (*Id.*)

Defendant complains that attorney Hamstra was merely "copied as one of many recipients" and "[t]he communication is most likely to be predominately for

business purposes, advice or strategy and not privileged." (Doc. 71, at 18.)

Defendant indicates that Plaintiff has agreed to produce these emails with

redactions "but has not as of this filing and it is unclear if any portion should be

redacted." (*Id.*)

Defendant's contention that Hamstra was merely "copied as one of many

recipients" on the email is incorrect. (Doc. 71, at 18.) Hamstra was a recipient.

Further, as Plaintiff argues, "[t]he fact that this email contains multiple recipients

does not alter the result of the privilege claim where, as here, the description

explains that the communication involves a request for legal advice." (Doc. 79, at

30.) The Court agrees. *See Legends Mgt. Co.*, 2017 WL 4227930, at *4 (holding

that the fact that an attorney was "one of many recipients" of a communication

does not *per se* invalidate its status as attorney-client communication). Given the

information provided, there is no basis for Defendant's conclusory statement that

the email are "most likely to be predominately for business purposes, advice or

strategy and not privileged." (Doc. 71, at 18.) Defendant's motion is **DENIED** as

to this category.

### 9.   Lines 120-122.

This is an email with the subject line "KCK CONTRACT – Follow-Up

Coordination Call" drafted by non-attorney Carl Niemann and sent to various non-

attorney employees as well as attorney Micah Hamstra. (Doc. 71-1, at 7.) Also

included are two attachments to that email, one written by Niemann and the other written by an otherwise unidentified "Pete."  (*Id*.)  The email is stated to be a "[m]eeting invitation containing details facilitating legal advice re payments under the 2021 contract and residential unit verification," while the attachments are stated to have been prepared for that purpose as well.  (*Id*.)  The documents are withheld on the basis of the attorney client-privilege and the work product doctrine.  (*Id*.)

Defendant again complains that attorney Hamstra was merely "copied as one of many recipients" of this meeting invitation.  (Doc. 71, at 18.)  Defendant contends the attachments, which were "authored by non-attorneys Carl Niemann and 'Pete'," were "likely for business purposes, advice and strategy and not privileged."  (*Id*.)

As stated above, the Court finds that the fact that an attorney was "one of many recipients" of a communication does not *per se* invalidate its status as attorney-client communication.  ***Legends Mgt. Co.***, 2017 WL 4227930, at \*4. Stated another way, advice from counsel to a corporate client does not lose its privileged status simply because it is shared among numerous corporate employees who have responsibility for the subject of the advice.  *See **Anaya***, 251 F.R.D. at 652 (citation omitted); *see also **Hansen Constr. Inc.***, 2017 WL 7726711, at \*2

(discussing when attorney-client privilege extends as far as "lower-level" corporate employees).

In addition, Plaintiff asserts that "[t]he invitations at issue are not those which simply indicate that a meeting is to occur" but rather "contain substantive information and discussion in the body and, in some instances, also attach documents that communicate or facilitate legal advice." (Doc. 79, at 15; Doc. 71-1, at Lines 120-122.) Plaintiff establishes this with citations to other meeting invitations with attorney Hamstra that "did not contain substantive discussions within the invitations" that were produced in their entirety by Plaintiff. (Doc. 79, at 16 (citing Docs. 79-3, 79-4).) The Court **DENIES** Defendant's motion as to Lines 120 and 121.

As for Line 122, however, there has been no explanation by Plaintiff as to the identity of "Pete." (Doc. 71-1, at 7, at Line 122.) As such, there is nothing to establish that information from or communication involving this individual would be subject to the attorney-client privilege. Defendant's motion is **GRANTED** as to line 122 and Plaintiff is directed to produce the same.

### 10.   Lines 130, 626, 187-189, 193, 317, 328.

Documents represented by Lines 130, 626, 187-189, 193, and 317, consist of email and attachments thereto with subject line of "KCK322 12/17 meeting agenda build." (Doc. 71-1, at 7, 11, 12, 19, 38.) The emails (including meeting

invitations) are listed as "seeking legal advice and detailing legal strategy re future meeting with the UG" while the attachments are stated to have been "prepared as work product related to negotiations on terms of the 2012 Contract." (*Id*.)   The email represented by Line 328 has the subject line of "KCK 12/17 meeting agenda build" and is described as an email "discussing legal advice and detailing legal strategy re future meeting with the UG." (*Id.*, at 20.)  The documents have been withheld on the basis of the attorney-client privilege and the work product doctrine.  (Doc. 71-1, at 7, 11, 12, 19, 20, 38.)  All of the documents except Lines 317 and 328 have attorney Micah Hamstra as a recipient or copied individual.  (*Id*.)

Defendant contends that because attorney Hamstra was merely included as one of many recipients, the meeting invitation and related emails "are likely to be predominately for business purposes, advice or strategy and not privileged (or not privileged in their entirety)." (Doc. 71, at 18.) Again, the fact that an attorney was "one of many recipients" of a communication does not *per se* invalidate its status as attorney-client communication. ***Legends Mgt. Co.***, 2017 WL 4227930, at *4.

Further, Plaintiff has explained that "[t]he invitations at issue are not those which simply indicate that a meeting is to occur" but rather "contain substantive information and discussion in the body and, in some instances, also attach documents that communicate or facilitate legal advice." (Doc. 79, at 15.)  As stated above, Plaintiff has produced – and has not claimed privilege for – emails

that consist of mere meeting invitations.  No valid justification to conduct an *in camera* inspection has been put forth by Defendant.  This portion of Defendant's motion is, therefore, **DENIED**.

### 11.  Line 156.

This email, with the subject line "Status update with UG/KCK 7.8," is being withheld on the basis of the attorney-client privilege and work product doctrine. (Doc. 71-1, at 9.)  The log indicates the document was drafted "in response to email string sent for purpose of facilitating legal advice from attorney M. Hamstra re disputed penalties assessed by the UG."  (*Id.*)

Defendant complaints that the email has no listed author and the only recipient is not an attorney.  (*Id.*)  Plaintiff has, however, "advised Defendant that the draft email was authored by John Blessing as indicated by email signature block in the document and that it is similar to the email identified in Non-Redacted Log Entry 242."  (Doc. 79, at 31, n.7.)

As discussed above, written communication between corporate management employees will be considered privileged when demonstrated to be made in confidence for the purpose of obtaining or imparting legal advice.  *See **White***, 586 F.Supp.2d at 1269.  The privilege log indicates this is the purpose of the email. (Doc. 71-1, at 9.)  Plaintiff has also indicated that this email is part of the series of communications discussed in subsection 12, *infra*.

There is no basis for the Court to conduct an *in camera* review in situations wherein the privilege log at issue provides sufficient description of the documents withheld, the requesting party "hasn't shown that the documents aren't privileged," and the underlying dispute comes down to "whether the privileges apply." *Jaiyeola*, 2021 WL 492654, at *6. This portion of Defendant's motion is **DENIED**.

### 12. Lines 157, 173, 242, 244, 394-97, 400-402, 577, 609-610.

These documents have the subject line of "Status update with UG/KCK 7.8" and consist of an email chain between several non-attorney employees of Plaintiff in which attorney Micah Hamstra is included directly (Lines 157, 173, 242, 244, 577), is copied (Line 173, 402) or the documents include forwards of email exchanges with him (Lines 394, 400, 401, 609, 610). (Doc. 71-1, at 9, 10, 14, 15, 24, 35, 37.) A few of the documents are email exchanged between non-legal employees. (*Id.*, at 24, Lines 395-97.) The documents have been withheld on the basis of the attorney-client privilege and work product doctrine with the stated purpose for the emails as "facilitating legal advice from M. Hamstra re disputed penalties assessed by the UG." (*Id.*)

Defendant asserts that attorney Micah Hamstra was merely "one of many recipients" of these communications. (Doc. 71, at 18, 19.) As such, Defendant draws the conclusion that the documents were "likely to be predominately for

business purposes, advice or strategy, summary of conversation with UG or underlying facts and not privileged." (*Id*., at 19-20.)

The fact that an attorney was "one of many recipients" of a communication does not *per se* invalidate its status as attorney-client communication. ***Legends Mgt. Co.***, 2017 WL 4227930, at *4.  *Cf*. ***Anaya***, 251 F.R.D. at 652 (citation omitted) and ***Hansen Constr. Inc.***, 2017 WL 7726711, at *2.  Defendant has made no argument that any of the individuals involved in the email chain would be outside the umbrella of the attorney-client privilege as to the topics discussed.  The sheer number of people involved in the discussion does not invalidate the privilege.

Further, the attorney-client privilege "protects both the giving of professional advice to those who can act on it as well as the giving of information by the client to the attorney so that sound and informed advice can be provided." ***Brown v. Unified School Dist. No. 501***, No. 10-1096-JTM-KMH, 2011 WL 111693, at *4 (D. Kan. Jan. 13, 2011) (citing ***Upjohn Co. v. United States***, 449 U.S. 383, 389–90 (1981)).  There is no justification to conduct an *in camera* review to determine if factual information is included in these documents.

Defendant also points out that "[n]o attorney [was] involved" in several of these communications according to the privilege log.  (Doc. 71, at 20.)  As stated previously, written communication between corporate management employees will be considered privileged when demonstrated to be made in confidence for the

purpose of obtaining or imparting legal advice.  *See White*, 586 F.Supp.2d at 1269.

This portion of Defendant's motion is, therefore, **DENIED**.

### 13.   Lines 206, 208, 212, 294-295, 319, 517.

This email chain, between non-attorney employees of Plaintiff, has the

subject line of "KCK conversation 12/5" and is described as "discussing legal

advice from M. Hamstra re Deffenbaugh continuing to provide services under the

2021 Contract and residential unit verification" (Lines 206, 208, 212, 295, 517),

seeking this legal advice (Line 294), or "facilitating" this legal advice (Line 319).

(Doc. 71-1, at 12, 13, 18, 19.)  The documents have been withheld on the basis of

the attorney-client privilege and work product doctrine.  (*Id*.)

Defendant again states that "[n]o attorney [is] involved [in the

communication] per log" and surmises that "[t]he communication is most likely to

be predominately for business purposes, advice or strategy and not privileged (or

not privileged in its entirety)."  (Doc. 71, at 18.)

As discussed above, written communication between corporate management

employees will be considered privileged when demonstrated to be made in

confidence for the purpose of obtaining or imparting legal advice.  *See White*, 586

F.Supp.2d at 1269.  The privilege log indicates this is the purpose of the email.

(Doc. 71-1, at 9.)

There is no basis for the Court to conduct an *in camera* review in situations wherein the privilege log at issue provides sufficient description of the documents withheld, the requesting party "hasn't shown that the documents aren't privileged," and the underlying dispute comes down to "whether the privileges apply." ***Jaiyeola***, 2021 WL 492654, at *6.  This portion of Defendant's motion is **DENIED**.

### 14.    Line 225.

This email is a meeting invitation, subject "KCK next steps," that Plaintiff contends "contain[s] details seeking legal advice re the 311 call system and further negotiations with the UG." (Doc. 71-1, at 13.)  The privilege log indicates it was exchanged between two non-attorney employees of Plaintiff. (*Id.*)

Defendant states that "[n]o attorney [is] involved [in the communication] per log" but concedes that Plaintiff "indicates Mr. Hamstra was one of several recipients." (Doc. 71, at 18; Doc. 79, at 21.)  Defendant surmises that "[t]he communication is most likely to be predominately for business purposes, advice or strategy and not privileged (or not privileged in its entirety)." (*Id.*, at 18-19.)

The Court will not rely on Defendant's conclusory assumption that the document may merely consist of business communications.  Defendant has advanced no valid justification for the Court to conduct an *in camera* review of this document.  As such, this portion of Defendant's motion is **DENIED**.

### 15.   Lines 276, 281, 283, 285, 286, 289-293, 303, 526.

These documents consist of email and certain attachments thereto (Lines 290-293) sent by non-attorney employees of Plaintiff to other non-attorney employees as well as attorney Micah Hamstra and paralegal Yvette Korb.  (Doc. 71-1, at 17, 18, 19.)  The privilege log indicates the emails sought legal advice or facilitated legal advice on various topics relating to Defendant.  (*Id*.)  One document, Line 526, was an email exchanged between non-attorney employees Carl Niemann and Harry Lamberton.  (*Id*., at 32.)  The privilege log indicates this is an "[e]mail forwarding email seeking legal advice re Deffenbaugh continuing to provide services under the 2021 Contract and residential unit verification."  (*Id*.)

Defendant asserts that attorney Micah Hamstra was merely "one of many recipients" of these communications.  (Doc. 71, at 19.)  As such, Defendant draws the conclusion that the documents were "likely to be predominately for business purposes, advice or strategy, summary of conversation with UG or underlying facts and not privileged."  (*Id*.)

As with the other documents for which this argument was raised, the fact that an attorney was "one of many recipients" of a communication does not *per se* invalidate its status as attorney-client communication.  ***Legends Mgt. Co.***, 2017 WL 4227930, at *4.  *Cf. **Anaya***, 251 F.R.D. at 652 (citation omitted) and ***Hansen Constr. Inc.***, 2017 WL 7726711, at *2.  As for Line 526, written communication

between corporate management employees will be considered privileged when demonstrated to be made in confidence for the purpose of obtaining or imparting legal advice. *See White*, 586 F.Supp.2d at 1269. Defendant has made no argument that any of the individuals involved in the email chain would be outside the umbrella of the attorney-client privilege as to the topics discussed. The sheer number of people involved in the discussion does not invalidate the privilege.

Further, the attorney-client privilege "protects both the giving of professional advice to those who can act on it as well as the giving of information by the client to the attorney so that sound and informed advice can be provided." *Brown*, 2011 WL 111693, at *4 (citation omitted). There is no justification to conduct an *in camera* review to determine if factual information is included in these documents. This portion of Defendant's motion is, therefore, **DENIED**.

### 16.    Line 322.

This is an email with the subject line "KCK house count validation and billing deadline" from a non-attorney employee of Plaintiff to a non-attorney employee. (Doc. 71-1, at 19.) The privilege log indicates it is a "[f]orward of email to [attorney] M. Hamstra requesting legal advice re KCK house count process" and states it is being withheld on the basis of the attorney-client privilege. (*Id.*)

Defendant notes that no attorney was "involved" in the communication per the log and then concludes that the email is "[l]ikely to be predominately for business purposes, advice or strategy or underlying facts and not privileged." (Doc. 71, at 19.)  Defendant does not dispute, however, that attorney Hamstra was "involved" in the underlying communication that was being forwarded between the non-attorney employees.

The Court will not rely on Defendant's conclusory assumption that the document may merely consist of business communications.  Further, the attorney-client privilege "protects both the giving of professional advice to those who can act on it as well as the giving of information by the client to the attorney so that sound and informed advice can be provided."  *Brown*, 2011 WL 111693, at *4 (citation omitted).

Defendant has advanced no valid justification for the Court to conduct an *in camera* review of this document.  As such, this portion of Defendant's motion is **DENIED**.

### 17.   Lines 369, 582, 588-91.

These are email with the subject line "WyCo Contract review" exchanged between various non-attorney employees of Plaintiff, sent for the "purpose of facilitating legal advice from M. Hamstra re 2012 Contract."  (Doc. 71-1, at 22, 35, 36.)  Two of the documents are attachments to one of these emails and were

prepared for the purpose of facilitating legal advice.  (*Id.*, at 36, Lines 590, 591.)

The documents have been withheld on the basis of the attorney-client privilege and

the work product doctrine.  (*Id*. at 22, 35, 36.)

Defendant merely states that "[n]o attorney involved per log."  (Doc. 71, at

19.)  Defendant then draws the conclusion that the communications were "[l]ikely

to be predominately for business purposes, advice or strategy or underlying facts

and not privileged."  (Doc. 71, at 19.)

Referencing the documents discussed in subsection B.9., *supra*, Plaintiff

explains that these documents "start from the original email and its attachments

(Non-Redacted Log Entries 589-591) regarding changes to a memorandum

regarding contract points; the original version of the memorandum was prepared

for a meeting with in-house counsel Micah Hamstra and others."  (Doc. 79, at 27.)

Plaintiff continues that the "follow-on emails (Non-Redacted Log Entries 330, 369,

582, 588) were discussions concerning changes to the memorandum that included

a reference to obtaining legal advice from Micah Hamstra."  (*Id*.)  Plaintiff also

points out that the memorandum is attached to emails to Hamstra and others which

were not challenged by Defendant.  (*Id*., referencing Doc. 71-1, at Lines 196-200.)

The attorney-client privilege "protects both the giving of professional advice

to those who can act on it as well as the giving of information by the client to the

attorney so that sound and informed advice can be provided." ***Brown***, 2011 WL

111693, at *4 (citation omitted).

There is no justification to conduct an *in camera* review to determine if

factual information is included in these documents.  The Court will not rely on

Defendant's conclusory assumption that the documents may merely consist of

business communications.  Defendant has advanced no valid justification for the

Court to conduct an *in camera* review of this document.  As such, this portion of

Defendant's motion is **DENIED**.

### 18.    Line 466.

This email, with the subject line "June and July KCK 311 fine data," was

sent by non-attorney employee Kent Harrell to several non-attorney employees.

(Doc. 71-1, at 28.)  The document has been withheld on the basis of the attorney-

client privilege and work product doctrine.  (*Id.*)  Plaintiff indicates the mail

"discuss[es] legal advice and prepar[es] work product remised pick ups, fine data,

and evaluation of the 311 system."  (*Id.*)

Defendant points out that "[n]o attorney [was] involved per log."  (Doc. 71,

at 20.)  Defendant then concludes that the communications were "[l]ikely to be

predominately for business purposes, advice or strategy or underlying facts and not

privileged."  (*Id.*)

As stated above, written communication between corporate management employees will be considered privileged when demonstrated to be made in confidence for the purpose of obtaining or imparting legal advice.  *See White*, 586 F.Supp.2d at 1269.  Defendant has made no argument that any of the individuals involved in the email chain would be outside the umbrella of the attorney-client privilege as to the topics discussed.  The sheer number of people involved in the discussion does not invalidate the privilege.

As stated above, it is well-established that the attorney-client privilege "protects both the giving of professional advice to those who can act on it as well as the giving of information by the client to the attorney so that sound and informed advice can be provided."  *Brown*, 2011 WL 111693, at \*4 (citation omitted).

There is no justification to conduct an *in camera* review to determine if factual information is included in these documents.  This portion of Defendant's motion is, therefore, **DENIED**.

### 19.   Lines 528-31.

These documents consist of an email (Lines 528, 530) attachments thereto (Lines 529, 531) with the subject line "Transfer DPT – Municipal Contract Pass Thru Analysis."  (Doc. 71-1, at 32-33.)  While the documents were sent and/or created by non-attorney employees of Plaintiff to other non-attorney employees,

the privilege log states that the documents were sent or created for purpose of

"discussing" or "facilitating" certain "legal advice from M. Hamstra re analysis of

municipal contracts."  (*Id*.)  They are being withheld on the basis of the attorney-

client privilege.  (*Id*.)

Defendant asserts that there was "[n]o attorney involved [in the

communications] per log." (Doc. 71, at 20.)  As such, Defendant draws the

conclusion that the documents were "likely to be predominately for business

purposes, advice or strategy, summary of conversation with UG or underlying facts

and not privileged."  (*Id*., at 20.)  Defendant indicates that Plaintiff "has agreed to

produce [these documents] with redactions but has not as of this filing and it is

unclear if any portion should be redacted."  (*Id*.)

The Court reiterates that written communication between corporate

management employees will be considered privileged when demonstrated to be

made in confidence for the purpose of obtaining or imparting legal advice.  *See*

***White***, 586 F.Supp.2d at 1269.  Defendant has made no argument that any of the

individuals involved in the email chain would be outside the umbrella of the

attorney-client privilege as to the topics discussed.  The sheer number of people

involved in the discussion does not invalidate the privilege.  No justification to

conduct an *in camera* inspection has been put forth beyond Defendant's conclusory

statement that the documents are likely to be "predominantly for business

purposes." Further, the attorney-client privilege "protects both the giving of professional advice to those who can act on it as well as the giving of information by the client to the attorney so that sound and informed advice can be provided." *Brown*, 2011 WL 111693, at *4 (citation omitted). There is no justification to conduct an *in camera* review to determine if factual information is included in these documents. This portion of Defendant's motion is, therefore, **DENIED**.

### 20. Lines 533, 539-540, 544, 556.

These email have the subject line "Kansas City KS Contract – Spring 2016 RO PI Issue" and were exchanged between various non-attorney employees of Plaintiff. (Doc. 71-1, at 33, 34.) The privilege log states attorney-client privilege as the reason they are withheld with the description that the email "seek[s]" or "request[s] legal advice from [attorney] M. Hamstra" (Lines 533, 544), "discuss[es]" such legal advice (Line 556), or was "exchanged for the purpose of facilitating legal advice" (Lines 539, 540) from Hamstra regarding "payments, fees, and rates disputed by the UG under the 2012 contract." (*Id.*)

Defendant states that, according to the privilege log, no attorney was involved in the communication. (Doc. 71, at 20.) Defendant continues, however, that Plaintiff has indicated that Hamstra was "one of the several recipients." (*Id.*; *see also* Doc. 79, at 25.) Regardless, Defendant concludes that the

communications were "[l]ikely to be predominately for business purposes, advice or strategy or underlying facts and not privileged." (*Id.*)

Plaintiff explains that attorney Micah Hamstra was involved in the underlying email originated from the legal department.

> The email string starts with an email from paralegal Yvette Korb and the redacted emails include attorney Micah Hamstra and paralegal Yvette Korb. Further, the email on [Doc. 79-10] that is partially redacted begins with 'I believe legal,' showing there is a discussion about information related to advice from the legal department. The descriptions for all of these entries explain that there was legal advice being sought. … (Doc. 71-2). The fact that some of the e-mail chain is not privileged does not waive the privilege as to the portion of the e-mail chain that is redacted.

(Doc. 79, at 25; *see also* discussion of Lines 51-53, 60, 61, 63, 365, 366, 370 from the Redacted Privilege Log (Doc. 71-2), at subsection A.4., *supra*.)

The Court reiterates that written communication between corporate management employees will be considered privileged when demonstrated to be made in confidence for the purpose of obtaining or imparting legal advice. *See White*, 586 F.Supp.2d at 1269. Defendant has made no argument that any of the individuals involved in the email chain would be outside the umbrella of the attorney-client privilege as to the topics discussed. The sheer number of people involved in the discussion does not invalidate the privilege.

No justification to conduct an *in camera* inspection has been put forth

beyond Defendant's conclusory statement that the documents are likely to be

"predominantly for business purposes."  The privilege log at issue (Doc. 71-1)

provides a sufficient description of the documents withheld and Plaintiff has

provided additional explanation.  Defendant "hasn't shown that the documents

aren't privileged," and the underlying dispute merely comes down to "whether the

privileges apply."  *See Jaiyeola*, 2021 WL 492654, at *6.  Defendant's motion is

**DENIED** as to this category.

### 21.    Lines 543, 551.

Finally, these emails have the subject line of "REQUEST FOR REVIEW –

KCK CONTRACT" and were sent by non-attorney employee Carl Niemann to

non-attorney employee Tomas Vujovic.  (Doc. 71-1, at 33.)  The privilege log

describes the email as "facilitating and discussing legal advice from [attorney] M.

Hamstra re negotiating provisions of the 2012 Contract."  (*Id.*)  The documents

have been withheld on the basis of the attorney-client privilege.  (*Id.*)

Defendant again points out that "[n]o attorney involved per log," then

concludes that the communications were "[l]ikely to be predominately for business

purposes, advice or strategy or underlying facts and not privileged."  (Doc. 71, at

20.)  Defendant states that Plaintiff has agreed to produce these documents with

certain redactions, but notes that Plaintiff "has not as of this filing and it is unclear

if any portion should be redacted." (*Id*.) Plaintiff responds that "[t]he redacted portions consist of communications which involve [attorney] Micah Hamstra and which contain requests for legal advice from [him] concerning the negotiation of the 2012 Contract, as the privilege description for these entries explain." (Doc. 79, at 31.)

Written communication between corporate management employees will be considered privileged when demonstrated to be made in confidence for the purpose of obtaining or imparting legal advice. *See White*, 586 F.Supp.2d at 1269. The privilege log at issue provides sufficient description of the documents withheld, Defendant "hasn't shown that the documents aren't privileged," and the underlying dispute comes down to "whether the privileges apply." *Jaiyeola*, 2021 WL 492654, at *6. Defendant's conclusory statement that the documents are probably for "predominately business purposes" is not a valid justification for the Court to conduct an *in camera* review. This portion of Defendant's motion is **DENIED**.

**IT IS THEREFORE ORDERED** that Defendants' Motion (Doc. 71) is **GRANTED in part** and **DENIED in part** as set forth herein.

IT IS SO ORDERED.

Dated this 26th day of April, 2021, at Wichita, Kansas.

s/ Kenneth G. Gale
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE